## Susan D. Rogers, Adm'x, v. Cleveland, Cincinnati, Chicago and St. Louis Ry. Co.

1. Practice—*What Must be Conceded to Plaintiff in Considering a Motion to Direct a Verdict for Defendant.*—When called upon to direct a verdict in favor of a defendant, it is the duty of the court to consider as true all that the evidence tends to prove in favor of the plaintiff.

2. FELLOW-SERVANTS—*Railroad Conductor and Fireman Are.*—A conductor and a fireman on a railroad train are fellow-servants.

Trespass on the Case.—Death from negligent act. Error to the Circuit Court of Wabash County; the Hon. PRINCE A. PEARCE, Judge presiding. Heard in this court at the February term, 1903. Affirmed. Opinion filed September 10, 1903.

LANDES & KOLB, attorneys for plaintiff in error.

JOHN T. DYE, C. S. CONGER and L. J. HACKNEY, attorneys for defendant in error.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of Wabash County, by plaintiff in error against defendant in error to recover damages for a personal injury resulting in death of plaintiff's intestate. At the conclusion of all the evidence, the jury, under direction of the court, returned a verdict in favor of defendant and the court rendered judgment on the verdict. To reverse this judgment, plaintiff in error brings the case to this court. The principal errors assigned are, that the court erred in directing a verdict, and in rendering judgment thereon.

Plaintiff's intestate was a fireman in the service of defendant, on an engine of one of its freight trains. His run was from Cairo to Mt. Carmel, passing, among other stations on the line of its road, those of Harrisburg and Carmi. The train crew in charge of the train upon which he was firing consisted of a conductor, one or more brakemen, an engineer, and himself as fireman. At Carmi there were two tracks, spoken of in the record as the " passing track " and the " stock track." These two tracks were used jointly by defendant and the L. & N. R. R. Co. About eleven o'clock in the forenoon of April 4th, defendant placed two empty stock cars on the " stock track " in position to be loaded. Soon thereafter the L. & N. R. R. Co. ran a car in on the same track, and to make it clear the passing track, displaced defendant's cars, running them beyond the " stock chute." The station agent of defendant was notified about noon and

again about four o'clock in the afternoon that the stock cars had been displaced.

Some time between four and six o'clock the shipper, in order to load the stock cars, pushed them back to the stock chute, and in doing so necessarily pushed the L. & N. R. R. Co. car to a point where it obstructed the "passing track." This "passing track" was a side track used by the two roads for switching, and was not a main track used by either of them for trains passing through Carmi. The car in no manner obstructed the main tracks.

Defendant had no actual notice of this obstruction to the switch or "passing track" until about eleven o'clock that night, when one of its agents went into the yard to seal the two cars that the shipper had loaded, and then discovered it. He immediately gave the train dispatcher notice that the "west end of the 'passing track' was blocked by a car and was dangerous." The train dispatcher within five minutes telegraphed, through the operator at Harrisburg, to the conductor of the train on which plaintiff's intestate was fireman, notifying him in effect that men loading stock at Carmi had left a car blocking the track, directing him to govern his train accordingly, and upon reaching Carmi to remove the car. The operator at Harrisburg delivered the message to the conductor upon the arrival of his train at the station, about twelve o'clock. At the same time this conductor received an order to take two loaded stock cars from the "stock track" at Carmi.

The train proceeded on its way and reached Carmi at 2:15 o'clock; stopped about ten car lengths before reaching the cross-over to the "passing track;" the engine was cut from the train and run up to the cross-over, where it stopped for the brakeman to throw the switch to allow it to run onto the "passing track;" plaintiff's intestate was at his place looking out of the cab window; the conductor started up the engine, it moved forward on the "passing track," and when it had made about one revolution plaintiff's intestate's head came in contact with the obstructing car and he was instantly killed.

It was the general custom to send to the conductor only, and not to each member of the crew, such notice and directions as were sent by the train dispatcher to the conductor, concerning the obstruction on the "passing track" at Carmi.

"It was the general custom to give notice  *  *  *  to the conductor of the train only, and it was his duty to notify the rest of the trainmen of the danger."

This custom was followed in this case by defendant, and defendant relied upon the conductor to perform his duty in giving the necessary notice and directions to the crew of his train, for his own as well as for their safety.

The conductor claims, and testified on trial, that he did give notice and directions to the rest of the trainmen, through the head brakeman; but this is denied, and in the state of case disclosed by this record it must be presumed that he failed of his duty in this respect on this occasion; for the rule is, when called upon to direct a verdict in favor of a defendant, it is the duty of the court to consider as true all that the evidence tends to prove in favor of the plaintiff.   We are of opinion from the evidence that it must be presumed that plaintiff's intestate was not guilty of any contributory negligence.

Counsel for plaintiff in error rely upon the propositions that it was the duty of defendant in error to use reasonable care and diligence to keep its road and its appurtenant structures in reasonably safe condition, and that its duty in that respect can not be delegated to its agents.   In support of their contention they cite C. & E. I. R. R. Co. v. Kneirim, 152 Ill. 458; C. & A. R. R. Co. v. Eaton, 194 Ill. 441; C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 272; C. & N. R. R. Co. v. Swett, 45 Ill. 197; Swift & Co. v. Ronan, 103 Ill. App. 475; C. & A. R. R. Co. v. Scanlan, 170 Ill. 106; C., B. & Q. R. R. Co. v. Avery, 109 Ill. 314; Pullman Palace Car Co. v. Laack, 143 Ill. 242, and many other cases.

We have examined all the cases cited, and to our minds they do not apply to a state of facts such as this record discloses.   In the case at bar the evidence does not tend to

498 · Appellate Courts of Illinois.

Vol. 109.] St. L., V. & T. H. R. R. Co. v. Town of Vandalia.

prove that there was any defect in the road, or in any of its appurtenant structures, or in any of its machinery or appliances. The condition complained of did not in any sense pertain to the suitableness, sufficiency or state of repair of defendant's tracks, structures or appliances, nor to any department of its service having any of these matters in charge. It was a condition incident to the operation of the appliances and not to their condition. It was part of this freight train conductor's ordinary duty to direct the movement of the train in his charge, and to have it go upon "passing tracks" and switch tracks at stations, and move and place cars, whenever directed to do so.

Counsel for plaintiff in error also contend that defendant in error should not have contented itself with notifying the conductor of the approaching train, but that it was its duty to notify each member of the train crew. In support of this contention they cite Pullman Palace Car Company v. Laack, 143 Ill. 242; M. & O. R. R. Co. v. Godfrey, 155 Ill. 78, and C. & A. R. R. Co. v. Eaton, 194 Ill. 441. We think these cases not applicable to the facts of the case at bar. They stand in the same class with those cited in support of the propositions above discussed.

We are of opinion that plaintiff's intestate came to his death as the result of the negligence of the conductor in charge of the train on which he was engaged at the time of the injury, and that such conductor and plaintiff's intestate were fellow-servants. Meyer v. I. C. R. R. Co., 177 Ill. 591.

We find no such error in this record as will warrant a reversal. The judgment of the Circuit Court is affirmed.